IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MICHAEL L. WEATHERSPOON,
     Plaintiff,

v.                                    Case No. 3:06cv55/EMT

BAPTIST HOSPITAL, INC.,
     Defendant.
_____/

## ORDER

Pending before the court is Defendant's Motion for Summary Judgment and documents in support thereof (Docs. 46, 47). Plaintiff, proceeding pro se, filed a memorandum and evidentiary materials in opposition (Doc. 52). Upon consideration of the materials submitted by the parties and for the reasons stated below, it is the opinion of the undersigned that Defendant's Motion for Summary Judgment should be granted.[1]

I.      BACKGROUND

---

[1]The parties consented to have the magistrate judge conduct all proceedings in this case, including trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings (*see* Docs. 22, 28).

The following material facts are without substantial controversy.[2]  Plaintiff claims that he was discharged from employment because of his race (*see* Doc. 1).  At the time of the events giving rise to this cause of action, Plaintiff was employed with Defendant Baptist Hospital, Inc. ("the Hospital"), where he began working in September 1998 as a medical technologist (Doc. 47, Weatherspoon Dep. at 22–23).  Approximately three to four months prior to his termination from employment in March of 2005, Plaintiff began reporting to a new supervisor, Jan Byard, who Plaintiff did not previously know (*id.*, Weatherspoon Dep. at 82).  Prior to his discharge from employment, Plaintiff had no problems with Byard (*id.*, Weatherspoon Dep. at 82, 83).

On March 14, 2005, Plaintiff worked at the Hospital until 11:00 p.m. (*id.*, Weatherspoon Dep. at 64–65).  After work, he returned home and had "a couple of drinks" of alcohol to "wind down" after a "stressful day" (*id.*, Weatherspoon Dep. at 64–65, 71).  At his deposition, Plaintiff stated that drank a couple of drinks containing Seagrams, gin, and orange juice and at least one beer (*id.*, Weatherspoon Dep. at 65–67).  He stated that drinking alcohol early in the morning was unusual for him because he usually did not drink alcohol on work nights (*id.*, Weatherspoon Dep. at 164–65).  During his deposition, Plaintiff stated that he went to sleep before 3:00 a.m. on March 15, but he initially could not recall when he awoke later that morning or what he did between the time he woke up and when he reported for work at 2:30 p.m. that day (*id.*, Weatherspoon Dep. at 67–71).  Later in his deposition, Plaintiff testified that he remembered "hanging out with a friend across the street" that morning and performing clean-up work from Hurricane Ivan that he was paid to do (*id.*, Weatherspoon Dep. at 71–73).  Plaintiff refused to identify the friend, the customers, or the amount that he was paid (*id.*, Weatherspoon Dep. at 74–75).  Additionally, Plaintiff refused to answer further deposition questions about his activities from the time he went to bed after drinking

---

[2]The court conveys the following as facts:  facts contained in Defendant's affidavits and attachments in support of its motion for summary judgment (Docs. 46, 47), which comply with the requirements for affidavits specified in Rule 56(e) or which would be admissible or usable at trial, Fed. R. Civ. P. 56(e); *see, e.g.*, Woods v. Chicago, 234 F.3d 979 (7th Cir. 2000); Dickinson v. Wainwright, 626 F.2d 1184, 1186 (5th Cir. 1980); Murrell v. Bennett, 615 F.2d 306, 310 n.5 (5th Cir. 1980); and facts contained in Plaintiff's attachments in support of his response (Doc. 52) to Defendant's motion for summary judgment, which would be admissible or usable at trial.  This court will not construe as facts any unsworn allegations contained in Plaintiff's response (Doc. 52) to Defendant's motion to dismiss, because the unsworn allegations do not meet the requirements of Federal Rule of Civil Procedure 56.  *See* Fed. R. Civ. P. 56(c), -(e).  Plaintiff was advised of the Rule 56 requirements by order of this court before he filed his response (*see* Doc. 49).

alcohol in the early morning hours of March 15 to the time he reported to work later that day (*id.*, Weatherspoon Dep. at 77).

Soon after Plaintiff reported for work on March 15, Ms. Byard spoke to him about a work-related matter and had a "look on her face," which Plaintiff believed was related to Byard smelling alcohol on his breath (*id.*, Weatherspoon Dep. at 99–101).   Byard called Plaintiff into her office, where another employee, histology worker Tonya Breckinridge, was present (*id.*, Weatherspoon Dep. at 100–01). Byard told Plaintiff that she smelled alcohol on his breath and that he needed to submit to a drug screen be tested (*id.*, Weatherspoon Dep. at 103).   Plaintiff conceded to Byard and Breckinridge that he had a drink "earlier that morning" (*id.*, Weatherspoon Dep. at 109) and later testified that the first thought in his mind when Byard told him he would have to be tested was "uh-oh" because he knew he had been drinking alcohol (*id.*, Weatherspoon Dep. at 178).   Plaintiff signed consent forms to submit to drug and/or alcohol screening by blood and urine tests, as well as an acknowledgment of the Hospital's drug and alcohol policy (*id.*, Weatherspoon Dep. at 103–06; *id.*, Jones Aff., attach. 4).   The test results indicated an alcohol level of .085, which Plaintiff thought was too high based on his belief that sufficient time had elapsed since his alcohol drinking earlier that morning to allow the alcohol to leave his body (*id.*, Weatherspoon Dep. at 37, 110; *id.*, Jones Aff., attach. 3 at 2; Doc. 52, attach. 1).[3]   Plaintiff testified that he believed the technologist who tested his sample, Phyllis Wisdom, may have recorded an erroneous result (Doc. 47, Weatherspoon Dep. at 114–15, 126–27).   However, Plaintiff could not produce any evidence verifying his belief, only his belief that the alcohol reading was too high (*id.*, Weatherspoon Dep. at 126–27).   Plaintiff testified that he did not have any problems with Ms. Wisdom, and he did not think she had anything against him (*id.*, Weatherspoon Dep. at 107–08, 127).   Moreover, Plaintiff, a lab worker himself, never altered any test during his employment, had never been asked to alter any test, and never saw anyone else alter a test at the Hospital (*id.*, Weatherspoon Dep. at 127–28).

After the alcohol tests, Plaintiff was placed on administrative leave and went home (*id.*, Weatherspoon Dep. at 132–33).   Ms. Byard called him at home that day and asked him to report to

---

[3]While Plaintiff's blood test results indicated an alcohol level of .085, there is no result from the urine test (*see* Doc. 52, attach. 1).

Venus Jones, the Employee Relations Manager, the next day (*id.*, Weatherspoon Dep. at 133–34; *id.*; Jones Aff. at ¶ 1).  The next day, Jones informed Plaintiff that he was being discharged because he violated the drug and alcohol policy (*id.*, Weatherspoon Dep. at 134–35; *id.*, Jones Aff. at ¶ 1).  Plaintiff made no statement on the discharge form in the "employee response" section (*id.*, Weatherspoon Dep. at 145–46).  Plaintiff did not complain about race discrimination until after he was discharged from employment (*id.*, Weatherspoon Dep. at 136–38).  While at the Hospital, Plaintiff never complained that he was treated differently or unfairly based on his race (*id.*, Weatherspoon Dep. at 92).  Plaintiff admits that no person in management, including Byard, ever made any comment about his race (*id.*, Weatherspoon Dep. at 95, 99).

When asked why he claims that he was discharged because of his race as opposed to his positive test for alcohol, Plaintiff testified that "it was the only thing [he] could conclude" and that he believes there was a conspiracy, but he "can't prove it" (*id.*, Weatherspoon Dep. at 177).  Plaintiff speculated that his race was a factor in his discharge because he "stick[s] out," and his supervisor "may" not have wanted him there (*id.*, Weatherspoon Dep. at 185–86).  Further, Plaintiff contends that the Hospital should not have discharged him based on the test because the result was not confirmed by an independent laboratory, and there could have been a "mistake" (*id.*, Weatherspoon Dep. at 189).  Finally, Plaintiff stated in his deposition that, even in the case where there was no doubt that an employee had violated the drug and alcohol policy, the Hospital should not terminate the employee for misconduct because it would be difficult for the offending employee to receive unemployment compensation or obtain another job (*id.*, Weatherspoon Dep. at 189–90).

The Hospital's alcohol substance abuse policy provides that an employee will be subject to discipline, up to and including discharge, for reporting to work under the influence or after using, consuming, or taking alcohol, if the employee's blood alcohol level is .08 or above (*id.*, Jones Aff., attach. 1 at 1, 2).  The Hospital does not routinely obtain a confirmation test from another laboratory when testing for the presence of alcohol if there is both a urine sample and a blood sample (*id.*, Jones Aff. ¶ 2; *id.*, Pollock Aff. ¶¶ 4, 5).  The blood test confirms whether alcohol was present and the quantity of alcohol in the individual's system at the time the test was taken (*id.*, Pollock Aff. ¶ 4).  The Hospital's policies do not require that the samples be sent to an independent laboratory for confirmation (*id.*, Jones Aff. ¶ 2).  Moreover, the Hospital has discharged other persons, including

a white employee named Keith Stevens, based upon alcohol policy violations without confirming blood test results (*id.*, Jones Aff. ¶ 3).

Sometime after he was discharged, Plaintiff filed a complaint of race discrimination with the Equal Employment Opportunity Commission (EEOC) (*id.*, Weatherspoon Dep. at 136–38).  The EEOC dismissed his claim and issued a "right to sue" letter on December 19, 2005 (Doc. 1, attach. 1).  Plaintiff did not file a charge of discrimination with the Florida Commission on Human Relations (Doc. 1 at 3).  Plaintiff initiated the instant action, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, on January 24, 2006 (*id.* at 6).

In his complaint, Plaintiff alleges that he was wrongfully discharged because of his race (*see id.* at 4–5).  Specifically, Plaintiff states that his supervisor, Ms. Byard, needed a "'fall guy' for an incident that occurred on March 14, 2005" (*id.* at 4).  While Plaintiff states that his duties "in the incident" were completely carried out, some of his coworkers were negligent, and Byard "conspired to form a case against [Plaintiff] using her word and her lab" (*id.*).  Plaintiff alleges that he was targeted because he was the first and only black male medical technologist at the Hospital (*id.* at 5).  As relief, Plaintiff seeks re-employment by the Hospital at a compensation level commensurate with six years of employment at Hospital, lost wages, and costs and fees (*id.* at 6).

II.    DISCUSSION

A.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  The "mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." *Id.*; *accord* <u>Tipton v. Bergrohr GMBH-Siegen</u>, 965 F.2d 994, 998 (11th Cir. 1992).

After a motion for summary judgment is made and supported as provided in Rule 56(c), "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  Celotex, 477 U.S. at 324; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'") (quoting Celotex, 477 U.S. at 324); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).  Evidence presented by Plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to Plaintiff.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999).  However, Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence or conclusory allegations are insufficient.  Celotex, 477 U.S. at 324.

B.    Wrongful Termination

Plaintiff alleges that he was wrongfully discharged because of his race (see Doc. 1 at 4–5). Specifically, Plaintiff states that his supervisor, Byard, needed a "'fall guy' for an incident that occurred on March 14, 2005" (id. at 4).  While Plaintiff states that his duties "in the incident" were completely carried out, some of his coworkers were negligent, and Byard "conspired to form a case against [Plaintiff] using her word and her lab" (id.).  Plaintiff alleges that he was targeted because he was the first and only black male medical technologist at Hospital (id. at 5).

Under the well-established three pronged standard of proof, an employee has the initial burden of establishing a prima facie case of disparate treatment in the workplace.  Plaintiff must show that "(1) he belongs to a protected class, (2) he was subjected to adverse job action, (3) his employer treated similarly situated employees outside his classification more favorably, and (4) he was qualified to do the job." Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999).  If Plaintiff

establishes a prima facie case, the burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory explanation for the adverse action. *See* <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973).  If the employer does so, the burden shifts back to the employee to show that the reason offered by the employer was not the real reason for the adverse employment action but merely pretext. *See* <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1528 (11th Cir. 1997), *cert. denied*, 522 U.S. 1045, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998). The employee largely accomplishes this by demonstrating either that the discriminatory motive more likely caused the adverse action or that the employer's explanation for the adverse action is "unworthy of credence." <u>Texas Dept. Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 256, 101 S. Ct. 1089, 1095, 67 L. Ed. 2d 207 (1981).

In the instant case, construing the facts in the light most favorable to Plaintiff, he has failed to establish a prima facie case of disparate treatment, because his claim does not meet all four prongs of the standard.  The Hospital concedes that Plaintiff belongs to a protected class, that he was discharged, and that he was qualified to do his job (but for the positive alcohol test) (Doc. 46 at 3). However, Plaintiff has not met the third prong of the standard, because he has not alleged that the Hospital treated similarly situated employees outside his race more favorably.  Moreover, the Hospital identified at least one white employee, Keith Stevens, who was also discharged based upon a blood test result that showed that the quantity of alcohol in his system exceeded the allowable amount in the Hospital's drug and alcohol policy without the Hospital confirming the test result with another laboratory.

Next, even if Plaintiff were able to establish a prima facie case of race discrimination, the Hospital articulated a legitimate, non-discriminatory reason for its decision to discharge Plaintiff. Specifically, the Hospital discharged Plaintiff because he reported to work with a blood alcohol level of .085, in violation of the Hospital's drug policy, which provides for discipline, up to and including discharge, of an employee who reports to work with a blood alcohol level above .08.  Finally, Plaintiff has produced no evidence demonstrating that the Hospital's articulated reason for discharging him was merely pretext.  Indeed, Plaintiff has not shown that his race played *any* part in Hospital's decision to fire him or that Hospital's explanation is unworthy of credence.

III.    CONCLUSION

Upon consideration of Plaintiff's claim and the evidence submitted, the court concludes that there exists no genuine issue of material fact, and that Plaintiff has failed to establish his claim under Title VII.  Construing the facts in the light most favorable to Plaintiff, he has failed to establish a prima facie case of disparate treatment.  Furthermore, the Hospital has articulated a legitimate, non-discriminatory reason for its decision to discharge Plaintiff, and Plaintiff has not demonstrated that the articulated reason was merely pretext.  Accordingly, as a matter of law, the Hospital is entitled to judgment in its favor.

Accordingly, it is **ORDERED**:

1.      Defendant's Motion for Summary Judgment (Doc. 46) is **GRANTED**.

2.      All pending motions are **DENIED as moot**.

3.      The clerk is directed to enter judgment in favor of Defendant.

**DONE AND ORDERED** this 8th day of January 2007.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**